## ALLEGED INSANITY OF ONE CHARGED WITH MURDER.

THE STATE OF OHIO v. ROSELOT.

69 Ohio State—Decided, October 27, 1903.

*Proceedings When Prisoner Alleged Insane—Section 7240, Revised Statutes—Duty of Court to try Question of Insanity—Defendant on Trial for Murder—Error for Court to Refuse Demand for Hearing, When—Charge to Jury.*

1. The provisions of Section 7240, Revised Statutes, are mandatory; and the mode therein prescribed for a trial of the question of the present insanity of a person under indictment is peremptory and exclusive.

2. When, therefore, at any time before sentence, the insanity of a defendant under indictment is suggested and brought to the attention of the court in which such indictment is pending in the manner provided in said Section 7240, it is the imperative duty of the court to order a jury to be impanneled to try such question, and such jury when so impaneled, shall be specially sworn to try the question whether the defendant is or is not then sane.

3. Where counsel for a defendant on trial for murder in the second degree, during the progress of such trial suggests to the court that the defendant is not then sane and presents to the court the certificate of a "respectable" physician to the same effect, and demands that a special jury be impaneled to try the question whether or not such defendant is then sane, it is error for the court to refuse such demand. And such error is not cured by the court thereafter, in its general charge to the jury trying said case, instructing said jury that: "If you think that you have not heard all of the truth in the case, because of defendant's mental condition and that you believe you are not justified, because of that fact, in finding him guilty, you may acquit him."

Error to the Circuit Court of Hamilton County.

This proceeding in error is one taken by the Prosecuting Attorney of Hamilton County, Ohio, on behalf of the State, under

favor of Section 7306a, Revised Statutes, to obtain a reversal of the order and judgment of the Circuit Court of Hamilton County reversing a judgment of conviction against the defendant in error obtained in the court of common pleas of said county at the October Term thereof, 1901. The facts, so far as they are necessary to an understanding of the question presented for determination in this case, are stated in the opinion of the court.

*Hoffheimer, Morris & Sawyer,* Prosecuting Attorneys, for the State.

*Thomas F. Shay,* for defendant in error.

CREW, J.; BURKET, C. J., SPEAR, DAVIS and PRICE, JJ., concur.

The defendant in error, Frederick Roselot, was on the twenty-ninth day of September, 1900, indicted by the grand jury of Hamilton county for the crime of murder in the second degree; on April 1, 1901, he was duly arranged on said indictment and pleaded thereto not guilty; thereafter the case was continued from time to time until December 16, 1901, when the case came on for trial, and the defendant, Frederick Roselot, and one of his counsel, Mr. Cogan, being then present in court, a jury to try said case was then and there selected, impanneled and sworn; on said day after said jury had been impanneled and sworn an adjournment was had and said cause was continued until the following morning, December 17th, at 10 o'clock A. M.; on December 17th, at 10 o'clock A. M., the trial of said cause was resumed and the hearing of testimony was begun; three witnesses were called and examined on behalf of the State, two of whom were cross-examined by Mr. Cogan, of counsel for defendant; thereupon, and at this point, a recess was taken until 2 o'clock P. M. of the same day; at 2 P. M., the hour to which a recess had been taken, Mr. Thomas F. Shay, a member of the law firm of Shay & Cogan, and one of counsel for defendant, Frederick Roselot, but who had been absent from the city of Cincinnati and had not theretofore appeared at or participated in said trial, appeared in court and filed his affidavit, suggesting and alleging the then present insanity of said Frederick Roselot, and asking "that this case should be passed until a reasonable

opportunity is afforded to inquire into the question of the defendant's present sanity." Counter affidavits were submitted on behalf of the State tending to establish the sanity of the defendant. Upon consideration of these several affidavits, and after inquiry made by the court of divers persons to ascertain if defendant was in mental condition to proceed with the trial, the court decided and announced as follows: "It is the opinion of the court at this time that the defendant is able to proceed with the trial, and the trial must go on." Thereupon the trial proceeded. On the following morning, to-wit, December 18, 1901, Thomas F. Shay, counsel for defendant, filed and presented to the court his further affidavit, alleging and suggesting the insanity of the defendant, Frederick Roselot, and at the same time also filing and presenting to the court the following certificate of Dr. John T. Booth, to-wit:

"CINCINNATI, December 18, 1901.

"To the Honorable Wm. Littleford:

"I, the undersigned, being a respectable physician practicing medicine in the city of Cincinnati, do hereby present to this court that I have examined the defendant, Fred. Roselot, and say to this court that he is at present an insane man wholly unable to give his counsel any assistance at present and is wholly unable to give intelligent testimony as a witness in his own behalf on this trial.

"(Signed) JOHN T. BOOTH, M. D."

Thereupon, and before proceeding further with said trial, counsel for defendant demanded that a special jury be impanneled under Section 7240, Revised Statutes, "to try whether or not the accused is sane." The court refused to impannel said jury and directed the trial to proceed. After hearing the evidence, arguments of counsel, and charge of the court, the jury returned a verdict of guilty. Thereafter a motion for new trial and in arrest of judgment was overruled by the court of common pleas; the case was taken to the circuit court, where the judgment of the common pleas was reversed on the ground, as appears from the journal entry, that there was error in the record and proceedings of the court of common pleas in this, towit: "That the court below, on the application being filed under Section 7240, Revised Statutes of Ohio, should have ar-

rested the proceedings of the trial and impanneled a special jury to try said issue." To procure a reversal of this judgment of the circuit court this proceeding in error is prosecuted.

The principal question presented for determination by the record in this case is: Whether the provisions of this Section 7240, Revised Statutes of Ohio, which prescribe the mode and provide the means for a trial of the issue of present insanity of a person under indictment, were intended to be and are mandatory and exclusive, or whether the provisions of said section are so far directory only, as that a court may in its discretion adopt some other and different mode of ascertaining the fact as to the sanity or insanity of the accused. Section 7240 is as follows:

"When the attorney of a person indicted for an offense suggests to the court in which the indictment is pending, at any time before sentence, that such person is not then sane, and a certificate of a respectable physician to the same effect is presented to the court, the court shall order a jury to be impanneled to try whether or not the accused is sane at the time of such impanneling; thereupon a time shall be fixed for a trial, and a jury shall be drawn from the jury box, and a venire issued, unless the prosecuting attorney, or the attorney of the accused, demand a struck jury, in which case such jury shall be selected and summoned as required by law; the jury shall be sworn to try the question whether the accused is or is not sane, and a true verdict given according to the law and the evidence; and on the trial the accused shall hold the affirmative; if three-fourths of the jurors agree upon a verdict, their finding may be returned as the verdict of the jury; and a new trial may be granted on application of the attorney of the accused, for the causes and in the manner provided in this title."

This statute is explicit in its terms as to the manner in which the question of the insanity of a defendant under indictment, when properly brought to the attention of the court, shall be submitted and determined, and it is peremptory in its requirement that when the insanity of a defendant is, at any time before sentence, suggested to the court in the manner therein provided, that the court shall order a jury to be impanneled to try the question whether or not the accused is sane at the time of such impaneling, and further, it prescribes the form of oath that shall be administered to the jury when so impanneled. While it has long been the humane and settled policy of our

law that no man shall be indicted and put upon trial upon a criminal charge, or be called upon to make his defense to such charge in a court of justice, who by reason of insanity is unable to comprehend his position, or is by reason of his insanity incapable of making his defense, yet in this state prior to the enactment of Section 7240, Revised Statutes, the method of determining the question of the sanity or insanity of a person under indictment was a matter largely within the discretion of the trial court and had not been made the subject of statutory regulation. Prior to this enactment the court might, in the exercise of its discretion, either submit the question to a jury, or it might itself inquire into and determine the same without the aid or intervention of a jury. The practice was by no means uniform, but differed in different jurisdictions. To provide for uniformity in the method of procedure, and to secure the accused the right to have the question of his sanity submitted to and determined by a jury specially impanneled and specifically sworn and instructed to try that particular issue, was, we think, plainly the purpose of this enactment. And such being its purpose, it must have been intended by the Legislature that the method therein provided for the submission and determination of such question should be followed, and should be exclusive, and this whether the question be raised before or during the progress of the trial, provided only that it be raised at some time before sentence. Whether this enactment without other or further limitation and restriction than is therein contained as to the time when the question of insanity may be raised or presented to the court is wise and expedient legislation, is a matter with we are not now concerned, inasmuch as the right to enact such statute is clearly within the legislative authority. The language of the statute is plain and unambiguous, and its provisions mandatory and emphatic that when, at any time before sentence, the attorney of a person indicted suggests to the court that such person is insane and presents to the court the certificate of a "respectable" physician to the same effect, such court *shall* order a jury to be selected and impanneled as therein provided; which jury when so impanneled shall be sworn to try the question whether the accused is or is not sane at the time such jury is impanneled. Upon the admitted facts of this case there

was, we think, such compliance with the requirements of this statute on the part of the defendant's counsel as to clearly entitle the defendant to avail himself of its provisions and to give to him the right to demand and have impanneled a special jury, particularly sworn, to try and determine the question of his sanity. This privilege and right was denied him by the court of common pleas, and in this the court erred.

It is however insisted by counsel for the State that if this action and judgment of the court of common pleas was erroneous, that nevertheless such error was not prejudicial to the defendant, and he ought not to be heard to complain thereof, for the reason, as is claimed, that the court thereafter submitted to the regular jury then trying the case the question of defendant's sanity, and that such question was submitted under an instruction from the court most favorable to the defendant. That instruction is as follows:

"It may be that he (defendant) has been prevented from disclosing matters to you that are of great importance to him. If you think that you have not heard all the truth in this case because of the defendant's mental condition and that you believe that you are not justified, because of that fact, in finding him guilty as charged, you may acquit him."

Palpably erroneous and unauthorized as this charge was, and apparently favorable to defendant as in some respects it certainly is, yet nevertheless the instruction so given is not the equivalent of such instruction as the defendant was entitled to have upon the submission to a jury of the question of his present insanity. Nor is this charge so favorable to the defendant as his counsel would seem to understand and assume. Counsel for the State, in argument, erroneously assume that the jury was told by this charge that if they should find that at the time of the trial defendant was then insane that they *must* acquit him. But such is not the language of this charge. By this charge the jury was not instructed that if they so found that they must acquit, nor that it would be their *duty* to acquit, but were told only that in the event they should so find and believe that they *might* acquit him. This charge can not, because favorable to the defendant, have the effect to deprive him of the right to com-

plain of the submission of the question of his then present insanity to the trial jury—a jury impanneled and sworn to try only the question of whether or not he was guilty of the crime with which he stood charged and for which he was then on trial.  Under this charge the jury was told "that if they thought they had not heard all of the truth in this case, because of the defendant's mental condition, they might acquit him."  Thus the jury was given to determine whether they had heard all of the truth and if they should be of the opinion that they had not, because of the defendant's mental condition, they were told that they might acquit him.  Under this instruction the insanity of the acquital could be had on that ground only after a finding by the defendant could only avail him as ground for acquittal; and acquittal could be had on that ground only after a finding by the jury that defendant was then insane, and before this jury was authorized to make such finding it was necessary that the whole of their number should concur therein.  But the law provides—Section 7240, *supra*—that on the trial of such issue—that of the present insanity—that "if three-fourths of the jurors agree upon a verdict their finding may be returned as the verdict of the jury."  Defendant through his counsel having made proper demand therefor, was entitled to have the question of his insanity submitted to a jury impanneled and sworn to try that question alone, three-fourths of whom could have determined a verdict.  The right to such jury having been denied him by the court of common pleas, the judgment of that court was properly reversed by the circuit court.

*Judgment of the circuit court affirmed.*